IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION AT TOLEDO

| | | |
|---|---|---|
| VINSON BLALOCK | : | **Case No.** |
| 10264 FAXON COURT | : | |
| CINCINNATI, OH 45215 | : | **Judge** |
| | : | |
| Plaintiff, | : | |
| | : | **COMPLAINT WITH** |
| v. | : | **JURY TRIAL DEMAND** |
| | : | |
| FCA US LLC | : | |
| 4400 CHRYSLER DRIVE | : | |
| TOLEDO, OH 43608 | : | |
| | : | |
| Defendant. | : | |

## I. NATURE OF THE CASE

1. This complaint is filed by Plaintiff Vinson Blalock, a disabled former employee of FCA US LLC, challenging his denial of a reasonable accommodations, disability discrimination, retaliation, and termination of his employment. He brings this action to obtain full and complete relief and to redress the employer's unlawful employment practices.

2. This action seeks declaratory, injunctive and other equitable relief from discrimination in employment against the Plaintiff, on account of his disability, pursuant to the Americans with Disabilities Act and Ohio Revised Code section 4112.02 (A).

## II. JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. 1367.

4. This Court has jurisdiction over the subject matter of this civil action pursuant to the Americans with Disabilities Act, 42 U.S.C. § 126. This Court has supplemental jurisdiction over Ohio Revised Code section 4112.02 (A), the state law claims, pursuant to 28 U.S.C. § 1367.

5. The unlawful employment practices described herein concern discriminatory acts that occurred at the FCA US LLC plant in Toledo, Ohio. Venue in this Court is proper pursuant to 28 U.S.C. § 1391. The events described herein occurred within the Northern District of Ohio. Plaintiff's claims arose and all relevant events occurred by Defendant in Toledo, Ohio.

### III. PARTIES

7. The Plaintiff, Vinson Blalock (hereinafter "Plaintiff"), is a citizen of the United States and a resident of Hamilton County, Ohio. At all relevant times Plaintiff was employed by Defendant in Lucas County, Ohio.

8. The Defendant, FCA US LLC, is a limited liability company that operates a facility in Toledo, Ohio.

### IV. EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

9. Plaintiff made a timely report of discrimination to an agency Equal Employment Opportunity Commission (hereinafter "EEOC") Counselor and the agency processed the complaint. The EEOC issued Plaintiff a Notice of Suit Rights on September 15, 2020. A copy of the EEOC notice is attached hereto and incorporated herein, as **Exhibit 1**.

### V. STATEMENT OF FACTS

10. Plaintiff is a former employee that has a disability and was regarded by Defendant as having a disability.

11. Plaintiff began working for Defendant on May 30, 2016 in Toledo, Ohio.

12. Plaintiff held the position of Business Unit Leader for the entirety of his employment with Defendant.

13. On or about May 3, 2018, Plaintiff began to feel lightheaded and generally ill while working for Defendant.

14. Plaintiff reported to Defendant's medical unit regarding his illness on May 3, 2018.

15. Defendant's medical unit examined Plaintiff including a check of his blood pressure.

16. Defendant's medical unit advised Plaintiff that he would not be permitted to continue working or to return to work with his blood pressure at the elevated levels detected.

17. Defendant's medical unit advised Plaintiff to seek prompt medical attention for his elevated blood pressure.

18. Plaintiff was sent home on medical leave by Defendant's medical unit.

19. Plaintiff followed the advice of the medical unit and sought medical attention.

20. Plaintiff's physician agreed with the medical unit that Plaintiff should not work with his elevated blood pressure.

21. Plaintiff's physician modified his treatment to address his elevated blood pressure.

22. Plaintiff's physician provided medical documentation for Plaintiff's absences from work.

23. Plaintiff's physician would communicate directly with Defendant's third-party benefit administrator, Sedgwick.

24. Sedgwick representative Samantha Krantz was the primary point of contact for Plaintiff and his physician regarding his medical documentation.

25. On or about August 20, 2018, Plaintiff was released to return to work by his treating physician.

26. Plaintiff reported back to work on or about August 20, 2018 and took his medical release to the Human Resources Department.

27. Defendant's Human Resources Department ordered Plaintiff to report to the medical unit for an evaluation.

28. On or about August 20, 2018, Plaintiff reported to the medical unit as instructed by the Human Resources Department.

29. On or about August 20, 2018, Defendant's medical unit examined Plaintiff and determined that his blood pressure was still elevated and refused to allow him to return to work.

30. Defendant's medical unit again instructed Plaintiff to seek medical attention for his elevated blood pressure.

31. Plaintiff's physician disagreed with the medical unit and believed that Plaintiff could return to work.

32. Upon information and belief, Defendant assumed that Plaintiff was manipulating his medical condition by not properly taking his medication.

33. Plaintiff was not permitted to return to work by Defendant.

34. Plaintiff was required to seek out a new physician because of Defendant's refusal to permit his return to employment.

35. Plaintiff sought the assistance of a blood pressure specialist and a new physician to try to obtain the documentation necessary to continue his time off work.

36. Plaintiff also sought the assistance of a blood pressure specialist and a new physician to try and facilitate his return to work.

37. On or about September 25, 2018, Plaintiff's new physician provided medical documentation to Sedgwick in support of Plaintiff's absences from August 20, 2018 through October 15, 2018.

38. Defendant requested updated medical documentation on or about October 10, 2018.

39. Plaintiff notified Defendant's third-party administrator that he was scheduled to see his blood pressure specialist on October 29, 2018 and his physician on November 8, 2018.

40. On or about November 12, 2018, Plaintiff's physician faxed medical documentation to Sedgwick in the same manner as done previously.

41. On or about November 12, 2018, Plaintiff's physician provided medical documentation to Sedgwick in support of Plaintiff's absences from October 15, 2018 through December 24, 2018.

42. Plaintiff received notice on or about November 17, 2018 that Sedgwick did not have the documentation faxed by his physician's office.

43. Plaintiff followed up with his physician and verified that the information was indeed faxed to Sedgwick on November 12, 2018.

44. Plaintiff requested that his physician resend the medical documentation to Sedgwick, which they agreed to do.

45. Plaintiff spoke with Sedgwick employee Samantha Krantz to verify whether the medical documentation was received by Sedgwick.

46. Sedgwick employee Samantha Krantz verified receipt of the medical information needed.

47. After verifying receipt of the medical documentation with Sedgwick's Samantha Krantz, Plaintiff received notice from Defendant requesting updated medical information.

48. Plaintiff reasonably believed there must be a delay between his having just provided it to Sedgwick and them providing to Defendant.

49. On or about December 10, 2018, Plaintiff received a written notice of his termination from employment with Defendant.

50. Defendant indicated the termination was based on Plaintiff's failure to provide medical documentation as requested.

51. Plaintiff immediately followed up with Sedgwick employee Samantha Krantz and Ms. Krantz verified that the medical documentation was received by her and forwarded to Defendant in the normal manner before November 20, 2018.

52. Sedgwick employee Ms. Krantz was unable to access Plaintiff's records in their system to determine exactly when Defendant got the records.

53. Plaintiff called Defendant's Human Resources Department and left a voicemail message regarding the termination notice he received and the verification from Sedgwick.

54. Plaintiff also sent a text message to one of Defendant's Human Resources Department employees but received no response.

55. Plaintiff called an acquaintance that was also a Defendant employee and asked that a message be provided to Defendant's Human Resources Department to contact him.

56. Although Defendant's Human Resources Department received Plaintiff's messages, Defendant employees refused to respond to Plaintiff.

57. Defendant withheld Plaintiff pay after terminating him and refusing to take his calls.

## VI. CAUSE OF ACTION

### COUNT I
### Disability Discrimination in violation of the Americans with Disabilities Act of 1990 and Ohio Revised Code section 4112.02 (A)

58. Plaintiff hereby incorporates paragraphs 1 through 57, above, as if fully rewritten herein.

59. Throughout his employment with Defendant, Plaintiff was able to perform the essential functions of his position as a Business Unit Leader.

60. Plaintiff suffers from an illness with his blood pressure that affected one or more of his major life activities including work.

61. Defendant treated Plaintiff as an individual with a physical disability that affected one or more of his major life activities including work.

62. Plaintiff requested an accommodation from Defendant that was not a hardship for Defendant.

63. After initially accommodating Plaintiff, Defendant withdrew the accommodation and otherwise ended the accommodation.

64. After initially recognizing the legitimacy of the medical situation facing Plaintiff, Defendant retaliated against Plaintiff for utilizing leave available to other Defendant employees.

65. The discrimination directed toward Plaintiff was sufficiently severe to affect the terms, conditions, and privileges of employment, and matters directly or indirectly related to employment.

66. The discrimination directed toward Plaintiff was based on his disability.

67. The discrimination directed toward Plaintiff was conscious, purposeful, intentional, malicious, or sufficiently reckless to warrant an award of punitive damages.

68. As a direct and proximate result of Defendant's actions, Plaintiff has suffered injury and damages.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against the Defendant in an amount exceeding one hundred thousand dollars ($100,000), together with pre-judgment interest, interest, costs herein expended, compensatory damages, punitive damages, reasonable attorney fees, and such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ Julius L. Carter
Julius L. Carter (#0084170)
Julius L. Carter Co., LPA
10 W. Second Street Suite 2229
Dayton, OH 45402
(937) 222-7900
(937) 222-7910 Fax
jcarter@juliuscarter.com
*Trial Attorney for Plaintiff*

## JURY DEMAND

Now comes Plaintiff and hereby demands a trial by Jury of all issues so triable.

Respectfully submitted,

/s/ Julius L. Carter
Julius L. Carter (#0084170)
Julius L. Carter Co., LPA

10 W. Second Street Suite 2229
Dayton, OH 45402
(937) 222-7900
(937) 222-7910 Fax
jcarter@juliuscarter.com
*Trial Attorney for Plaintiff*