UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Vinson Blalock, | Case No. 3:20-cv-2764 |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| FCA US, LLC, | |
| Defendant. | |

## I. INTRODUCTION

On December 14, 2020, Plaintiff Vinson Blalock filed a Complaint alleging disability discrimination, under both federal and state law, against Defendant FCA US, LLC. (Doc. No. 1). During the discovery period, the parties reached an impasse regarding the exchange of certain documents requested by Blalock. Pursuant to Local Rule 37.1, Blalock certified this discovery dispute to the Court but, despite numerous attempts at resolution, none was reached. Currently pending is Blalock's motion to compel the production of the requested documents. (Doc. No. 16). FCA filed an opposition to this motion, (Doc. No. 17), and Blalock filed a reply. (Doc. No. 18).

## II. BACKGROUND

According to the Complaint, Blalock was employed by FCA at their Toledo, Ohio facility from May 2016 to December 2018 as a Business Unit Leader. (Doc. No. 1). In May 2018, Blalock felt lightheaded while at work and reported to the medical unit. The medical unit placed Blalock off work and advised him to seek private medical treatment for his blood pressure. On the advice of his

physician, Blalock took a leave of absence. This leave of absence, including the submission of medical documentation, was handled exclusively by FCA's third-party administrator, Sedgwick.

On August 20, 2018, Blalock's physician released him to return to work. (*Id.* at 3). FCA then ordered Blalock to report for a medical evaluation, where it was reported Blalock's blood pressure was still too high and he would not be cleared to return to work. Blalock sought further treatment and provided documentation to Sedgwick to substantiate his continued leave of absence through October 15, 2018. (*Id.* at 4).

Upon a request for updated medical documentation, Blalock's physician allegedly sent medical documentation to Sedgwick on November 12, 2018, that continued Blalock's leave through December 24, 2018. But on November 17, 2018, Sedgwick notified Blalock it did not have his updated documentation. Blalock then followed up with his physician who resent the paperwork. Sedgwick allegedly confirmed it had received the updated documentation and provided it to FCA on or before November 20, 2018. Nevertheless, Blalock was terminated by FCA for failing to provide medical documentation to substantiate his absence.

After Blalock initiated this lawsuit, discovery progressed well until Blalock raised several purported deficiencies in FCA's responses to his written discovery requests. Following a telephone status conference on September 22, 2021, the parties attempted to resolve the deficiencies through supplemental requests and responses. Yet, the issue could not be resolved and, in November 2021, Blalock's attorney requested a discovery dispute conference pursuant to Local Rule 37.1. The parties attempted to resolve the issues over the course of the next four months. Despite these efforts, the parties had reached an impasse and I granted Blalock leave to file this motion to compel.

### III. STANDARD

Trial courts have broad discretion to control the scope of the discovery process. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018). Generally, parties may "discover any nonprivileged evidence or information relevant to their claim." *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (citing Fed. R. Civ. P. 26(b)(1)). But the scope of discovery may appropriately be limited "where the information sought is overly broad or would prove unduly burdensome to produce." *Surles*, 474 F.3d at 305 (citing Fed. R. Civ. P. 26(b)(2)).

The party seeking the disputed discovery "bears the initial burden of proving the information sought is relevant" and therefore is discoverable under Rule 26(b). *O'Malley v. NaphCare Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015) (citation and internal quotation marks omitted). If that burden has been met, the opposing party must show why the material should not be produced. *O'Malley*, 311 F.R.D. at 463.

### IV. ANALYSIS

Blalock seeks responsive documents to the following four requests:

1. All Plaintiff's medical records in possession, custody, or control of FCA or Sedgwick, including any records provided to FCA or Sedgwick after Plaintiff's date of termination;

2. The names of all non-union employees at the FCA facility where Plaintiff was employed, that took DAP leave, S & A leave, or a leave of absence for health, medical, or disability reasons,[1] from January 1, 2014 through December 31, 2018;

3. A copy of all documentation provided to extend the leave of all employees identified at Request No. 2; and

4. A copy of the contract between FCA and Sedgwick.

(Doc. No. 16 at 7).

---

[1] Blalock's request is narrower than appears, despite listing all the leave programs generally, he is only requesting the names of those employees who utilized the same leave program as he did. But Blalock asserts FCA had previously stated he was on S & A leave but is now asserting he was on DAP leave. (*See* Doc. No. 16 at 6).

The disputes in this matter take two forms: first, the relationship between FCA and Sedgwick, including the custodianship of certain records; and second, who are considered relevant comparators for purposes of discovery.

In his motion to compel, Blalock asserts he requested medical records and leave information for alleged comparators from FCA, only to be told that those records were in the custody of Sedgwick. (Doc. No. 16 at 3). On October 18, 2021, Blalock subpoenaed Sedgwick seeking his own medical records and other documentation pertaining to his leave claim. (*Id.*). On November 3, 2021, Sedgwick responded directing Blalock's counsel to subpoena FCA instead. (Doc. No. 16-1). Upon inquiry by Blalock's counsel, FCA's counsel asserted it was "unable to access the records" and "suggested subpoenaing the records from [FCA]." (Doc. No. 16 at 3). Blalock asserts a copy of the contract between FCA and Sedgwick will shed light on "the roles and responsibilities [FCA] has delegated to Sedgwick." (Doc. No. 18 at 3).

In response, FCA argues the contract is a confidential business document that holds no relevance to this case and that FCA has already produced all the relevant documents from Sedgwick related to Blalock's leave of absence. (Doc. No. 17 at 11).

As to production of the Sedgwick contract at Request #4, I do not find FCA's argument regarding relevance and burdensomeness to be persuasive. FCA is ordered to produce a copy of its contract with Sedgwick, including any and all executed supplementals, addenda, or exhibits. Should FCA deem it necessary, it may also propose a protective order to address concerns regarding confidentiality.

Regarding Request #1, FCA appears to assert in its opposition brief that all responsive documents have been produced at FCA US/Blalock 19-578, 670-71, 1297-1349. (*See* Doc. No. 17 at fn. 1). Without any specific evidence to the contrary, I am inclined to take counsel's word that all responsive documents have been produced. Should the event arise where FCA attempts to use a

responsive document not produced to Blalock, Blalock may avail himself of available remedies at that time.

Requests #2 and #3 seek information regarding alleged comparators who utilized the same leave program as Blalock while employed at FCA's Toledo facility. The crux of this dispute is who is a "similarly situated" individual. Blalock argues the relevant comparators in this case are non-union employees who worked at the same facility and took a medical or disability leave of absence in the five years preceding his termination. (Doc. No. 18 at 3-4). FCA counters that his position is at odds with the legal standard outlined in *Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir. 1992), and relevant comparators are those with similar "job responsibilities, supervisors, or most importantly, the same standards and same conduct engaged in by Blalock." (Doc. No. 17 at 7). In FCA's view it has satisfactorily responded to Blalock's request because it produced records for individuals who were also terminated for being "absent without authorization." (*Id.* at 8).

In the years after *Mitchell*, the Sixth Circuit has disapproved of a rigid standard for determining who is similarly situated and instead directed courts "to look at those [*Mitchell*] factors relevant to the factual context." *Jackson v. FedEx Corporate Servs., Inc.,* 518 F.3d 388, 394 (6th Cir. 2008); *see also Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998) (finding courts "should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee . . .").

Under these factual circumstances, Blalock's job title, job responsibilities, and supervisor are not solely determinative of proper comparators. Instead, it is those individuals who were subject to the "same standards and have engaged in the same conduct" as Blalock, *i.e.*, non-union employees who utilized the same leave of absence program as Blalock, requested extensions beyond their original return to work date, and had a lapse in their medical documentation. From this pool of potential comparators, Blalock should be able to narrow down those individuals, if any, who also

5

had a lapse in their medical documentation but were not terminated for being "absent without authorization."[2] Yet, I am sensitive to FCA's arguments regarding relevance and burdensomeness, and as such and for purposes of consistency with those records already produced, shall restrict the responsive time frame to January 1, 2016 through October 31, 2021. The parties shall propose a protective order to address concerns regarding employee confidentiality.

## V. CONCLUSION

For the reasons stated above, I grant the motion to compel as to Requests #2 – 4, subject to the limitations described above, and deny the motion to compel as to Request #1. (Doc. No. 16).

Because the deadline for discovery expired during the pendency of this dispute, I order the discovery deadline extended until September 30, 2022. A telephone status conference will be held on September 13, 2022, at 9:00 a.m. Counsel to call bridge line at 877-411-9748, access code 1231873.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge

---

[2] FCA's responsive production to Requests #2 and #3 are restricted to those employees who utilized the same leave program as Blalock.