UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Vinson Blalock,                                                                            Case No. 3:20-cv-2764

                 Plaintiff,

       v.                                                                      MEMORANDUM OPINION
                                                                                 AND ORDER

FCA US LLC,

                 Defendant.

## I.      INTRODUCTION

Plaintiff Vinson Blalock filed a motion for leave to amend his complaint. (Doc. No. 34). Defendant FCA US, LLC filed a brief in opposition. (Doc. No. 35). Blalock filed a reply. (Doc. No. 36). FCA also filed a motion for leave to file a sur-reply (Doc. No. 37), which Blalock opposed. (Doc. No. 38).

## II.      BACKGROUND

Blalock worked for FCA as a Business Unit Leader—a non-union, management position—beginning in 2016. (Doc. No. 1 at 2). On May 3, 2018, FCA medical personnel diagnosed Blalock with elevated blood pressure after he reported feeling lightheaded and ill. (*Id.*). Blalock took a medical leave of absence to deal with his condition and was released by his physician to return to work on August 20, 2018. (*Id.* at 3). When he attempted to do so, FCA medical personnel conducted an examination and refused to let him because his blood pressure was still elevated. (*Id.* at 4). So, Blalock remained on leave. (*Id.*). According to Blalock, FCA assumed he was

intentionally manipulating his blood pressure by failing to take his medication in order to avoid having to return to work. (*Id.*).

While on leave, Blalock or his physician periodically sent updated medical documentation to FCA through its third-party benefits administrator, Sedgwick. (*See id.* at 4). Blalock sent, and FCA received, the first round of updated documentation on September 25, 2018. (*See id.*). On October 10, 2018, FCA requested a second round of updated documentation. (*Id.*). On November 12, 2018, Blalock and his physician faxed the documentation to Sedgwick in the manner they had done before, and Blalock confirmed Sedgwick's receipt of the documentation. (*Id.* at 4-5). Samantha Krantz, a Sedgwick employee, told Blalock that Sedgwick sent the October 10, 2018 documentation to FCA in a timely manner. (*Id.* at 5). Nevertheless, FCA requested Blalock provide updated medical documentation and then terminated him. (*See id.*). Blalock sued FCA for disability discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA") and Ohio law, on December 14, 2020. (*See* Doc. No. 1).

The parties have grappled over discovery during the long pendency of this case. Pertinent to this motion, Blalock previously moved to compel FCA to provide documents related to several unionized FCA employees who, according to Blalock, were terminated for failing to provide updated medical documentation but were later reinstated. (*See* Doc. No. 30 at 3). I denied that motion because Blalock "ha[d] not met his burden to show how the information he seeks is relevant" to his claims for disability discrimination under federal and Ohio law as pleaded in his complaint. (Doc. No. 33 at 1). I further indicated Blalock would need to move for leave to amend his complaint under Rule 15(a)(2) if he sought "to pursue a claim for relief based on new information." (*Id.*). I provided a briefing schedule for the parties if Blalock chose this route. (*Id.*).

2

Blalock now seeks to amend his complaint with new allegations and new claims related to disability discrimination and retaliation. (*See* Doc. No. 36 at 2).¹

Blalock's new factual allegations expand on the timeline offered in the original complaint and describe new events related to his medical leave and termination. Blalock asserts Sarah Bento, an FCA employee, returned him to work on limited duty in the Human Resources department after he was initially diagnosed with high blood pressure. (Doc. No. 36-1 at 3). Blalock contends an FCA medical unit physician wrote in Blalock's medical file that Blalock was manipulating his high blood pressure condition to avoid having to return to work. (*Id.* at 4). Blalock also alleges FCA has reinstated other "employees on disability leave" who failed to submit medical documentation after it learned the employees did so through no fault of their own. (*Id.* at 7). He asserts these employees are similarly situated. (*Id.*). In addition, Blalock contends FCA refused to pay him for the disability leave to which he was entitled through the date of his termination, November 20, 2018. (*Id.*).

The claims in the proposed amended complaint also differ, to an extent, from those in the current complaint. In the current complaint, Blalock brings one count of "Disability Discrimination" in violation of both the ADA and Ohio law. (Doc. No. 1 at 6). Blalock alleges FCA failed to accommodate Blalock's disability and retaliated against him for using medical leave, though the current complaint does not formally denote these as separate claims. (*See id.*).

The proposed amended complaint would include the following claims: failure to accommodate in violation of the ADA and Ohio law for ending Blalock's disability leave

---

¹ Blalock's initial motion for leave to amend also sought to add an entirely new claim for discrimination on the basis of race in violation of Ohio law. (*See* Doc. No. 34-1 at 11-12). In his reply, however, Blalock abandons this new claim because "Plaintiff agrees with Defendant that the claim does not apply." (Doc. No. 36 at 2). He attached a revised version of his amended complaint which removes the race discrimination claim but is otherwise identical to his initial proposed amended complaint. (*Compare* Doc. No. 34-1 *with* Doc. No. 36-1). Accordingly, I will treat the updated version of the amended complaint as the one Blalock wishes to file.

3

prematurely (Count 1); retaliation under the ADA and Ohio law for terminating him and refusing to extend his disability leave (Count 2); discriminatory treatment under the ADA and Ohio law for terminating him and failing to reinstate him (Count 3); and discriminatory treatment under the ADA and Ohio law for failing to pay him for the disability leave to which he was entitled (Count 4). (*See* Doc. No. 36-1 at 7-12).

### III. STANDARD

Rule 15 provides a party may amend its pleadings once as a matter of course within 21 days of serving the pleading or, if a responsive pleading is required, 21 days after service of a responsive pleading. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989). "Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Hageman v. Signal L. P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973).

### IV. ANALYSIS

**A. Motion for Leave to Amend the Complaint**

Blalock argues he should be granted leave to amend his complaint because his proposed amendments are based on "newly discovered facts" that "have come to light since the original complaint was filed" courtesy of the discovery process. (Doc. No. 34 at 1). FCA argues that

4

Blalock's proposed amendments are improper because they would be futile. (*See* Doc. No. 35 at 2). It does not offer any arguments as to notice or prejudice. (*Id.* at 3-7).

"A proposed amendment is futile," and a court should not grant leave to amend, where the amendment "would not withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim." *Kriepke v. Wayne State Univ.*, 807 F.3d 768, 782 (6th Cir. 2015) (citing *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)) (further citation omitted). To survive a motion to dismiss under Rule 12(b)(6), "even though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted)).

When ruling on a motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff and accepts as true well-pleaded factual allegations. *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 896 (6th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Legal conclusions and unwarranted factual inferences are not entitled to a presumption of truth. *Bell Atl. Corp.*, 550 U.S. at 555. The court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case[,] and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Because the "'federal Americans with Disabilities Act [] is similar to the Ohio handicap discrimination law,'" courts can "consider the ADA and state law claims simultaneously by looking to the cases and regulations that interpret the ADA." *Talley v. Fam. Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1104 n.3 (6th Cir. 2008) (quoting *City of Columbus Civ. Serv. Comm'n v. McGlone*, 697 N.E.2d 204,

206 (Ohio 1998)). The same applies to federal and Ohio retaliation law. *See Threat v. City of Cleveland*, 6 F.4th 672, 681 (6th Cir. 2021).

The ADA prohibits discrimination in employment "against a qualified individual on the basis of a disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *see* Ohio Rev. C. § 4112.02(A). Such discrimination also includes the denial of a reasonable accommodation. *See* 42 U.S.C. § 12112(b)(5)(A); Ohio Admin. C. § 4112-5-08(E). The ADA also prohibits retaliation, which is discrimination "against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a); *see* Ohio Rev. C. 4112.02(I).

### 1. Disparate Treatment Claims (Counts 3 and 4)

A plaintiff can prove his disability discrimination case with direct or circumstantial evidence, and "each has its own test." *Blanchet v. Charter Comms., LLC*, 27 F.4th 1221, 1227 (6th Cir. 2022). For disability discrimination claims relying on circumstantial evidence, courts apply the *McDonnell-Douglas* burden-shifting framework. *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 433 (6th Cir. 2014).

FCA argues Blalock's proposed amended complaint fails to plead causation for its discriminatory treatment claims. (*See* Doc. No. 35 at 6-7). Blalock argues he has identified both direct and circumstantial evidence of discrimination sufficient to render these claims plausible. (*See* Doc. No. 36 at 3-5). I conclude he has not.

#### i. Direct Evidence

Blalock first argues his proposed amended complaint contains direct evidence: that an FCA employee wrote Blalock was "manipulating his medical condition to avoid returning to work" in

6

Blalock's medical file. (Doc. No. 36-1 at 4). "Direct evidence is 'evidence that proves the existence of a fact without requiring any inferences.'" *Bledsoe v. Tennessee Valley Auth. Bd. of Dirs.*, 42 F.4th 568, 580 (6th Cir. 2022) (quoting *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 806 (6th Cir. 2020)) (internal citation omitted). "The evidence, on its own, must lead a reasonable juror to conclude that a decisionmaker was biased, and that adverse animus motivated the adverse action." *Bledsoe,* 42 F.4th at 580-81 (citing *Scheick v. Tecumseh Pub. Schs.*, 766 F.3d 523, 530 (6th Cir. 2014)).

Far from proving any decisionmaker at FCA took an adverse action against Blalock because of his blood pressure condition, this evidence points to at least one other reason: a belief Blalock was faking it in order to miss work. *See Burgess v. Indus. Fabricators, Inc.*, No. 2:19-cv-4579, 2021 WL 1140096 at *6 (S.D. Ohio March 25, 2021) (explaining the plaintiff's argument was "self-defeating" because he "advances the theory that he was terminated because his employer genuinely believed he submitted fake doctor's notes, not because he had a disability"); *Persinger v. Indus. Fabricators, Inc.*, No. 2:19-cv-4583, 2021 WL 4288363 at *5 (S.D. Ohio Sept. 21, 2021) ("Firing someone based on a mistaken, but genuine, belief that the doctor's notes are fake is not discriminatory under the ADA.").

Because Blalock alleges FCA personnel may have had a reason for firing him separate from his disability, he has not presented evidence "that adverse animus motivated the adverse action" requiring no inference on the part of a factfinder. *Bledsoe*, 42 F.4th at 581. So, the proposed amended complaint does not contain an allegation of direct evidence that FCA intentionally discriminated against Blalock because of a disability.

### ii. Circumstantial Evidence

To prove a disability discrimination case based on circumstantial evidence, a plaintiff must make out a *prima facie* case by showing (1) he is disabled, (2) he is otherwise qualified to perform the essential functions of a position, with or without accommodation, (3) he suffered an adverse

7

employment action, (4) the employer knew or had reason to know of the plaintiff's disability, and (5) the position remained open, the disabled individual was replaced by a non-disabled individual, or the plaintiff was treated worse than similarly-situated non-protected employees. *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011); *Jones v. Potter*, 488 F.3d 397, 404 (6th Cir. 2007).

If a plaintiff makes this showing, a defendant must then articulate a legitimate, non-discriminatory reason for any adverse action. *Talley*, 542 F.3d at 110. If the defendant does so, the plaintiff must show the employer's proffered reason was a pretext for unlawful discrimination. *Id.* A plaintiff's disability must ultimately be the but-for cause of a complained-of adverse employment action. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012).

At the pleading stage, a plaintiff's complaint need not "establish a prima facie case under *McDonnell Douglas* and its progeny" in order to meet *Twombly* and *Iqbal*'s standard. *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012); *see also Chapman v. Olymbec*, No. 2:18-cv-2842, 2019 WL 5684177 at *5 (W.D. Tenn. Nov. 1, 2019) (noting "*McDonnell Douglas* sets an evidentiary standard, not a pleading requirement") (quoting *James v. Hampton*, 592 F. App'x 449, 460 (6th Cir. 2015)) (internal quotation marks and further citations omitted). Still, that pleading standard "applies to causation in discrimination claims." *Keys*, 684 F.3d at 610. So, while Blalock's proposed amended complaint "need not present detailed factual allegations, it must allege sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference" FCA discriminated against Blalock because of his disability. *Id.* (internal quotation marks and citations omitted).

FCA concedes Blalock's proposed amended complaint plausibly alleges he is disabled and that FCA took several adverse employment actions against him. (Doc. No. 35 at 6). FCA instead targets causation, contending Blalock does not offer a plausible basis for relief because he does not allege he was replaced by a non-disabled employee, does not allege the position remained open, and

8

does not allege "similarly situated non-disabled employees" were treated differently. (*See* Doc. No. 35 at 4-7).

    Blalock focuses on the "similarly-situated" inquiry, arguing:

> The employees that were similarly situated to Plaintiff are those employees that were taking disability leave and were not denied the right to return to work when released by their physician, were not terminated because of a delay in providing medical documentation, were reinstated when they showed that the failure to provide a medical update was outside of their control, were not denied pay for disability leave that was supported by medical documentation, and were not required to repay disability leave that was already paid.

(Doc. No. 36 at 5).

    The proposed amended complaint refers to "similarly situated employees" five times. (Doc. No. 36-1 at 7, 8, 9, 10). But it never alleges these employees are non-disabled. Rather, the proposed amended complaint alleges other employees *also on temporary disability leave* were not subject to the adverse actions Blalock suffered. (*See id.* at 7).

    Taking this as true, nothing in the proposed amended complaint supports the inference that other FCA employees taking temporary disability leave are "outside the protected class." *Southall v. Ford Motor Co.*, 645 F. Supp. 3d 826, 838 (S.D. Ohio 2022); *see also Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672, 683 (6th Cir. 2016). Blalock does not explain why it would be reasonable to infer that other employees on temporary disability leave are non-disabled. So, Blalock's proposed amended complaint identifies no relevant comparators. Without proper comparators, his claim of discriminatory treatment based on the different experiences of other FCA employees cannot proceed. *See Gohl*, 836 F.3d at 683 ("The comparator requirement is the be all and end all of the circumstantial-evidence test. If there are no comparators, there is no way to deploy it.").

    Absent any comparators, Blalock argues eight other allegations combine to render his disability discrimination claims "plausible:" (1) the FCA medical professional's note that Blalock was manipulating his medical condition, (2) FCA refusing to allow him to return to work, (3) FCA terminating his employment, (4) FCA refusing to reinstate his employment, (5) FCA refusing to

9

respond to his calls and messages, (6) FCA claiming that his case was closed and his case information was not accessible, (7) FCA refusing to pay him for approved disability leave time, and (8) FCA taking action to recover sums already paid to him on disability leave. (Doc. No. 36 at 4).

But Blalock fails to explain how any of this amounts to disability discrimination. He cites no case law to support his argument, and he does not indicate what reasonable inferences could be drawn from these facts that might support the causation element for the claims in Count 3 and Count 4. (*See* Doc. No. 36 at 4-5). This deficiency is even more pronounced because Blalock's complaint does not identify any similarly-situated, non-protected employees who were treated more favorably, does not allege Blalock was replaced by a non-disabled individual after being fired, and does not allege Blalock's position remained open after his termination.

Certainly Blalock is not limited strictly to the methods of proof in the *prima facie* case at the complaint stage. *See Keys*, 684 F.3d at 609-10. But absent allegations sufficient to show causation by any of the three traditional routes, and absent any explanation of how the alleged facts in his complaint otherwise show causation, his discriminatory treatment claims are not plausible.

### 2.     Failure to Accommodate Claim (Count 1)

FCA makes no specific argument about the failure-to-accommodate claim, instead asserting, generally, that "the proposed amended complaint" fails to allege Blalock was treated "less favorably than someone outside the protected class." (Doc. No. 35 at 6). But this argument addresses a potential deficiency in a circumstantial evidence case. A reasonable accommodation claim "necessarily involve[s] direct evidence . . . of discrimination." *Blanchet*, 27 F.4th at 1227 (quoting *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007)). "When an ADA plaintiff premises his claim upon direct evidence," as Blalock must for his failure to accommodate claim, courts "jettison the familiar *McDonnell Douglas* burden-shifting framework." *Kleiber,* 485 F.3d at 869. Instead, Blalock must show: (1) he is disabled, (2) he is otherwise qualified for his position, and (3)

10

he requested an accommodation. *See id.* If he does so, FCA can prevail by showing the challenged job criterion is "essential" or that a proposed accommodation will impose an "undue hardship on the employer." *Id.*

FCA's argument addresses none of these elements. Because FCA's futility argument addresses an evidentiary framework inapplicable to Blalock's failure to accommodate claim in Count 1, I reject it as to that claim.

### 3. Retaliation Claim (Count 2)

The *McDonnell Douglas* framework does apply to Blalock's proffered retaliation claim. "The plaintiff bears the initial burden to establish a prima facie case of retaliation, which requires a showing that (1) the plaintiff engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action." *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014).

For the retaliation claim in Count 2, FCA again targets causation, arguing that the proposed amended complaint "do[es] not present facts causally connecting Blalock's request for reasonable accommodation to any adverse action." (Doc. No. 35 at 7).[2] Blalock argues, "Defendant retaliated against Plaintiff for utilizing his disability leave because they speculated that he did not need the leave and was manipulating his condition to qualify." (Doc. No. 34 at 2). Based on the allegations

---

[2] FCA's brief asserts both Count 2 and Count 4 of the proposed amended complaint contain retaliation claims. (*See* Doc. No. 35 at 7). Although Count 4 of the proposed amended complaint is captioned, "Disability Discrimination in violation of the Americans with Disabilities Act of 1990 and Ohio Revised Code section 4112.02 (A) *and Retaliation in violation of Ohio Revised Code section 4112.02(A)*," Count 4 does not actually purport to allege a retaliation claim other than in the caption. (Doc. No. 36-1 at 11) (emphasis added). Instead, Count 4 alleges, "Defendant discriminated against Plaintiff by treating him less favorably than similarly situated employees that were paid the leave they were approved for." (Doc. No. 36-1 at 11). Conversely, Count 2 alleges FCA "retaliated against Plaintiff for utilizing leave available to other Defendant employees" despite the caption for Count 2 lacking any reference to retaliation. (Doc. No. 36-1 at 8).

11

in the proposed amended complaint, Blalock's requested accommodation appears to be temporary disability leave. (*See* Doc. No. 36-1 at 8). Unfortunately, neither party cites any case law in making these arguments, contrary to the requirement of the Local Rules with respect to motions. *See* Local Rule 7.1(c) (a party's memorandum must include "the points and authorities on which it relies in support of the motion").

A plaintiff's burden to establish causation requires them to "'put forth some evidence to deduce a causal connection between the retaliatory action and the protected activity.'" *A.C. ex. rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 699 (6th Cir. 2013) (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000)). This evidence must allow an inference that the employer would not have taken the adverse action "had the plaintiff not engaged in protected activity." *A.C. ex. rel. J.C.*, 711 F.3d at 699 (quoting *Nguyen*, 229 F.3d at 563) (internal quotation marks omitted).

Temporal proximity coupled with other evidence can suffice to meet this burden. *See A.C. ex. rel. J.C.*, 711 F.3d at 699-700 (temporal distance of three weeks plus evidence defendant's statements were false sufficed to show proximity); *Bryson v. Regis Corp.*, 498 F.3d 561, 577 (6th Cir. 2007) (request for an accommodation greeted with "skepticism" two days later sufficient to show causation); *Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501, 513 (6th Cir. 2016) (termination three weeks after sending email opposing discriminatory treatment, coupled with testimony the plaintiff did not commit the errors for which she was purportedly fired, sufficed to show causation). But temporal proximity alone is usually not enough to show causation, unless "an adverse employment action occurs very close in time after an employer learns of a protected activity." *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).

Under the lenient Rule 12 standard, there is a plausible causal link between Blalock's request for temporary disability leave and his termination. Blalock alleges FCA personnel viewed his request for an accommodation derisively because of a baseless and unreasonable belief he was malingering.

(*See* Doc. No. 36-1 at 4). Even though FCA allegedly received all the documentation necessary to approve Blalock's request for an extension of his temporary disability leave, FCA terminated Blalock less than a month later. (*See id.* at 6-7).

Taken together, the fairly-close temporal proximity combined with FCA's allegedly unreasonable rejection of Blalock's medical documentation suffices to create a causal inference of retaliation. *See Wyatt v. Nissan N. Am.*, 999 F.3d 400, 427 (6th Cir. 2021) ("one- to two-month time lapse between the protected activities and the adverse actions," combined with other evidence of "negative animus" sufficient to show causation); *see also Chaniott v. DCI Donor Servs., Inc.*, 481 F. Supp. 3d 712, 724 (M.D. Tenn. 2020) (plaintiff's showing that a "decision to terminate him" was "a direct outgrowth of the process surrounding his claim of disability and his request for an accommodation" is enough to create an inference of causation).

### 4. Conclusion

Because Blalock's discriminatory treatment claims in Counts 3 and 4 would not withstand a motion to dismiss under Rule 12, it would be futile for Blalock to amend his complaint to include them. I deny his motion for leave to amend as to those claims. But because FCA has failed to show the failure to accommodate and retaliation claims in Counts 1 and 2 would not survive a motion to dismiss, and because it offers no other argument opposing Blalock's motion for leave to amend, I grant his motion as to those claims.

### B. Motion for Leave to File a Sur-reply

Neither the Federal Rules of Civil Procedure nor the Local Civil Rules expressly address whether and under what circumstances a sur-reply brief may be appropriate. But "sur-replies . . . are highly disfavored," and whether to permit one is "left to the broad discretion of the trial court." *Carter v. Paschall Truck Lines, Inc.*, 364 F. Supp. 3d 732, 748 (W.D. Ky. 2019) (internal citations and quotation marks omitted). Courts often consider whether the party seeking to file the sur-reply brief

has shown good cause, such as the need to address a legal issue that was raised for the first time in a reply brief. *See, e.g., Key v. Shelby Cnty.*, 551 F. App'x 262, 264-65 (6th Cir. 2014); *Geiger v. Pfizer, Inc.*, 271 F.R.D. 577, 580-81 (S.D. Ohio 2010).

FCA argues a sur-reply is warranted because of the updated proposed amended complaint Blalock attached to his reply brief. (Doc. No. 37 at 1; *see* Doc. No. 36-1). But as I explained above, the updated version of the proposed amended complaint is identical to the initial proposed amended complaint, except the updated version has removed the race discrimination claim. (*See* Doc. No. 36-1). FCA acknowledges this. (*See* Doc. No. 37 at 1). FCA presented arguments against the other proposed amendments to the complaint in its brief in opposition, and it identifies no new evidence or legal arguments advanced in Blalock's reply brief. (*See id.*; Doc. No. 35 at 3-7). Because FCA has not pointed to any "new reasons and evidence" in the reply that might require me to give it "an opportunity to respond," I deny the motion for leave to file a sur-reply. *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481-82 (6th Cir. 2003).

## V.     CONCLUSION

For the reasons discussed above, I grant in part and deny in part Blalock's motion for leave to amend his complaint. (Doc. No. 34). I deny FCA's motion for leave to file a sur-reply. (Doc. No. 37). Blalock may file an amended complaint limited to the claims in Count 1 and Count 2 of his proposed amended complaint. (*See* Doc. No. 36-1). Any such amended complaint, in compliance with this order, must be filed no later than 14 days after the issuance of this opinion.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge